```
             IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF ARKANSAS
                       PINE BLUFF DIVISION


KIANNA G. REED                                          Plaintiff

v.                          5:08CV00323 BSM/HLJ

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                Defendant
```

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge Brian S. Miller.  The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

**RECOMMENDED DISPOSITION**

Plaintiff, Kianna G. Reed, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits, Childhood Disability benefits and Supplemental Security Income (SSI), based on disability. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the

Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009); Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382(a)(3)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Plaintiff alleged that she was limited in her ability to work by mood disorders, hypertension, bipolar disorder and cannabis

abuse/dependence. (Tr. 39-40) The Commissioner found that she was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through June 28, 2007, the date of his decision. (Tr. 23-24) On October 29, 2008, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7) Plaintiff then filed her complaint initiating this appeal. (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 21 years old at the time of the hearing. (Tr. 236) She is a high school graduate and completed one semester of college. Id. She has past relevant work as a production operator at a chicken processing plant. (Tr. 17, 23, 59, 235-36)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i) (2006). If the claimant is, benefits are denied,

---

[1]The Hon. Donald R. Rebsamen.

regardless of medical condition, age, education or work experience. Id. at §§ 404.1520(b); 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. Id. at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. Id. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. Id. at §§ 404.1520(c); 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. Id., §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. Id.

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. Id., §§ 404.1520(a)(4); 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. Id., §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If so, benefits are denied. Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. Id., §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. Id.

The ALJ found Plaintiff met the non-disability criteria for

Childhood Disability benefits.[2]  (Tr. 22)  He found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.[3]  (Tr. 17)  He found that Plaintiff had a "severe" impairment, but that she did not have an impairment or combination of impairments that met or equaled a Listing.  Id.  He judged that Plaintiff's subjective allegations were not borne out by the overall record and were not fully credible.  (Tr. 21)

The ALJ found that Plaintiff retained the residual functional capacity for a full range of unskilled sedentary jobs.  Id.  He determined she was unable to perform her past relevant work.  (Tr. 22)  The ALJ correctly noted that, once Plaintiff was determined to be unable to perform her past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age, education and past work.  Id.  Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her

---

[2] Plaintiff had drawn surviving child's benefits on her deceased father's record until age 18, August, 2003. (Tr. 17) She alleged that she became disabled November 15, 2004. Id. The ALJ found that she was at least 18 and unmarried. Id. If she were disabled before the age of 22, she would be entitled to Childhood Disability benefits. Id. Otherwise, the criteria are the same as for Disability Insurance benefits and SSI.

[3] He noted that she had worked for a little over a month since then, but deemed that work period an unsuccessful work attempt. (Tr. 17)

limitations, for example, small parts assembler or escort driver.[4] Id. Thus, the ALJ concluded that Plaintiff was not disabled. Id.

Plaintiff argues that the ALJ erred by failing to apply Social Security Ruling 02-01p and in and by failing to find that she met or equaled Listings 12.03 and/or 12.04.

First, Plaintiff contends the ALJ failed to apply Social Security Ruling 02-01p.[5] (Br. 15-17) Plaintiff never alleged any limitation based on her obesity. (Tr. 106-07, 235-47) In fact, she testified that it was her normal weight. (Tr. 244) Plaintiff's obesity was a longstanding impairment, and she was capable of performing similar and greater exertional work despite her weight. See Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995)(claimant had 16 year work history despite weight). In April, 2006, she told her treating psychiatrist that she was doing well and had good energy. (Tr. 205) They discussed the usefulness of exercise. Id. As early as October of 2005, he assessed that she was "back to 100%." (Tr. 169) Her mental status was the best he'd ever seen. Id. Plaintiff questioned whether she could go back to work and said that she could get a job with a single phone call; he encouraged her to do so. Id. In December of 2005, Charles Spellman, Ph.D., evaluated her. (Tr. 180-82) He observed,

> She seemed to be quite normal today and I asked her how she's disabled from working as long as she's on her

---

[4]The ALJ's opinion said "escort or driver." (Tr. 22) The Court views that as scrivener's error. The vocational expert clearly testified that the hypothetical individual could perform work as an escort vehicle driver. (Tr. 248)

[5]Titles II and XVI: Evaluation of Obesity.

medication.  Neither she nor her mother could come up with anything and kept referring to how she was when she doesn't take her medications.

(Tr. 180)

She told Dr. Spellman she wanted to start school and become a nurse. (Tr. 182) He noted no physical limitations. *Id.* She repeatedly indicated that she wanted to go back to school. (Tr. 207, 212, 214, 218)

The ALJ clearly considered her obesity. (Tr. 17, 18, 21, 22) In fact, he cited her obesity as limiting her to sedentary work. (Tr. 22) Social Security Ruling 02-01p does not mandate any special procedures for evaluating the effects of obesity. The ALJ did not specifically cite Social Security Ruling 02-01p in his opinion, which might have been the better practice, but he was not required to do so. The Court concludes that the ALJ adequately applied that Ruling in evaluating Plaintiff's obesity.

Next, Plaintiff contends that the ALJ erred in failing to find that she met or equaled Listing 12.03 and/or 12.04. (Br. 17-21) Those Listings read as follows:

> 12.03 *Schizophrenic, Paranoid and Other Psychotic Disorders:* Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
> A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
>   1. Delusions or hallucinations; or
>   2. Catatonic or other grossly disorganized behavior; or
>   3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
>     a. Blunt affect; or
>     b. Flat affect; or

   c. Inappropriate affect;
or
   4. Emotional withdrawal and/or isolation;
AND
  B. Resulting in at least two of the following:
  1. Marked restriction of activities of daily living; or
  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence, or pace; or
  4. Repeated episodes of decompensation, each of extended duration;
OR
  C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
  1. Repeated episodes of decompensation, each of extended duration; or
  2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
  3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpart P, App. 1 (2006).

  12.04 *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
  The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
  A. Medically documented persistence, either continuous or intermittent, of one of the following:
  1. Depressive syndrome characterized by at least four of the following:
  a. Anhedonia or pervasive loss of interest in almost all activities; or
  b. Appetite disturbance with change in weight; or
  c. Sleep disturbance; or
  d. Psychomotor agitation or retardation; or
  e. Decreased energy; or
  f. Feelings of guilt or worthlessness; or

      g.  Difficulty concentrating or thinking; or
      h.  Thoughts of suicide; or
      i. Hallucinations, delusions or paranoid thinking; or
      2.  Manic syndrome characterized by at least three of the following:
      a.  Hyperactivity; or
      b.  Pressure of speech; or
      c.  Flight of ideas; or
      d.  Inflated self-esteem; or
      e.  Decreased need for sleep; or
      f.  Easy distractibility; or
      g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
      h.  Hallucinations, delusions or paranoid thinking; or
      3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
      B.  Resulting in at least two of the following:
      1.  Marked restriction of activities of daily living; or
      2.  Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4.  Repeated episodes of decompensation, each of extended duration;

OR
      C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
      1.  Repeated episodes of decompensation, each of extended duration; or
      2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
      3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpart P, App. 1 (2006).

Plaintiff recites some of the limitations incorporated in these

two Listings, but provides no citation to the record in support of her conclusory assertions that she met these Listings. Such a failure to cite to the record in support of an argument is waiver of the argument.

> [W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: "Judges are not expected to be mind[]readers. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990),  cert. denied, 494 U.S. 1082 (1992)(citations omitted); accord, Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings); Perez v. Barnhart, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate briefing); Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review); Hartmann v. Prudential Ins. Co. of America, 9 F.3d 1207, 1212 (7th Cir. 1993) (failure to press a point, even if mentioned, and to support it with proper argument and authority forfeits it) (Posner, C.J.); SEC v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992) (it is obligatory that appellant claiming error as to factual determination provide court with essential references to record to carry burden of proving error); Leer v. Murphy, 844 F.2d

628, 635 (9th Cir. 1988) (issues raised in brief which are not supported by argument are deemed abandoned).

In any event, in order to meet a mental Listing, a claimant must show that she met the Part B criteria of that Listing.[6] In other words, she must demonstrate that she had at least two "marked" restrictions on (1) activities of daily living, (2) maintaining social functioning and (3) maintaining concentration, persistence or pace, or that she had one "marked" restriction from the three characteristics and repeated episodes of decompensation,[7] each of

---

[6] An exception is Listing 12.06, Anxiety Related Disorders. A claimant does not have to meet the Part B criteria if she can demonstrate a complete inability to function independently outside the area of one's home. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06C (2006). Another exception is Listing 12.05A, B or C, Mental Retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2006).

[7] 4. *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to

extended duration.  Greg Wooten, M.D., a psychiatrist who briefly treated Plaintiff,[8] indicated that Plaintiff had no restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation within a twelve month period, each lasting at least two weeks.  (Tr. 224)  Disability Determination Services physicians also concluded that Plaintiff had less than "marked" limitation of function in the referenced areas.  (Tr. 195)  Therefore, Plaintiff did not meet Listing 12.03 or 12.04.

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.    E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Richardson v. Perales, 402 U.S.

---

substitute for the listed finding in a determination of equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C (2006).

[8]The List of Exhibits incorrectly identifies him as a DDS physician.  (Tr. 3)

at 401; see also Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

    THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

    IT IS SO ORDERED.

    DATED this 28th day of January, 2010.

*/s/ Henry L. Jones, Jr.*
_____
UNITED STATES MAGISTRATE JUDGE